UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:05-cr-00006-JAW |
| | ) | |
| CHARLES D. MILES, JR. | ) | |

**ORDER ON REQUEST FOR EARLY TERMINATION**

On June 7, 2005, a federal grand jury charged Charles D. Miles, Jr. with issuing repeated threats of extreme violence against Presidents William J. Clinton and George W. Bush, Maine Governor John E. Baldacci, and U.S. Magistrate Judge Margaret J. Kravchuk, U.S. Attorney Paula Silsby, and others. *First Superseding Indictment* (ECF No. 13). Mr. Miles was initially found incompetent, *Order* (ECF No. 33), but after treatment, he was restored to competency. *Minute Entry* (ECF No. 40). Mr. Miles pleaded guilty on August 14, 2006 and on January 19, 2007, the Court sentenced him to 96 months in prison and three years of supervised release. *J.* (ECF No. 71); *Am. J.* (ECF No. 73). On March 24, 2014, the U.S. Probation Office (PO) filed a request for early termination of Mr. Miles' supervised release. *Early Termination Req.* (ECF No. 75).

In its request, the PO explained that after Mr. Miles was released from federal custody on January 18, 2013, he was immediately transferred to Riverview Psychiatric Hospital in Augusta Maine where he was formally committed. *Id.* at 1. On March 4, 2014, Mr. Miles was convicted of a series of state criminal charges: criminal mischief, terrorizing, violating a condition of release, and trafficking of

contraband in a state hospital. *Id.* The PO says that all of these offenses occurred when he was a patient at the state psychiatric hospital. *Id.* He was sentenced to four months incarceration in the Kennebec County Jail. *Id.*

The PO has concluded that further federal supervised release is unnecessary. The PO notes that Mr. Miles is likely to remain in state custody, either in county jail or at the state psychiatric hospital, for the foreseeable future—a period likely to include the remaining twenty months of his federal supervised release. During the period of Mr. Miles' state custody as a prisoner or patient, the PO will not be able to provide services to him because he is not in the community. Furthermore, if the PO acted on these new violations of the conditions of his supervised release, the remedy would likely be to return Mr. Miles to the state psychiatric hospital, where he shortly will be anyway.

In general, under 18 U.S.C. § 3583(e)(1), once a person has served at least one year of supervised release, a court is authorized to terminate a term of supervised release "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." Before doing so, a court is required to consider factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(e). Because a refusal to terminate a term of supervised release is not a modification of the conditions of supervised release, a court is not required to hold a hearing under Federal Rule of Criminal Procedure 32.1(c) if it decides not to grant a request for early termination. *United States v. Reagan*, 162 F. App'x 912, 913 (11th Cir. 2006). Furthermore, whether to terminate a period of supervised release is subject to the

2

discretion of the trial judge. *United States v. Perry*, 397 F. App'x 521, 522 (11th Cir. 2010).

The Court grants the PO's request for early termination but with some misgivings. The Court accepts the PO's view that while Mr. Miles is in state custody, either in jail or at the state psychiatric hospital, it makes little sense for federal probation officers to keep his case as an open matter, theoretically requiring supervision and services. Furthermore,

> [t]he primary goal of supervised release is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who has spent a fairly short period of time in prison . . . but still needs supervision and training programs after release.

S. Rep. No. 98-225, at 124 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307. Here, it would be difficult for the federal probation officer to achieve the primary goals of supervised release while Mr. Miles is committed to a state psychiatric hospital.

The Court's misgivings are two-fold. First, Mr. Miles does not simply threaten violence; he has carried out violent acts. At the time of his sentencing, he was a Criminal History Category VI under the United States Sentencing Guidelines. He had been convicted of a number of assaults and criminal mischiefs. In 1999, he was charged with starting a fire at the Skowhegan Maine Fairgrounds and was found not criminally responsible due to insanity. Since the age of ten, he has been in and out, mostly in, one psychiatric facility after another. Mr. Miles' repeated threats against these public officials were vile, direct, and ominous.

Second, if the Court were confident that Mr. Miles would remain at the state psychiatric institution during the remaining period of supervised release, it would

3

be more comfortable terminating supervised release early. However, his criminal record suggests that the state psychiatric facility may release Mr. Miles. Again, Mr. Miles was charged with committing an arson as well as a number of other crimes on March 30, 1999. He was found not criminally responsible due to insanity. He then proceeded to continue to commit crimes while incarcerated or hospitalized: (1) an April 11, 1999 aggravated criminal mischief, when he destroyed a sprinkler system at the Maine Correctional Institution; (2) a January 16, 2000 criminal mischief and assault when he destroyed a room at what was then called the Augusta Mental Health Institute (AMHI) and harmed a man named Peter Weed; (3) a January 2000 criminal mischief, when he destroyed a light fixture at AMHI; (4) an April 10, 2000 criminal mischief and assault when he destroyed $1,000 worth of property at AMHI; and (5) a January 15, 2001 criminal mischief when he destroyed a state room. However, on December 25, 2003, he was charged with escape and terrorizing when he failed to return after being released from the psychiatric hospital on temporary leave. If the officials at the state psychiatric institution decided to release Mr. Miles into the community on some sort of temporary release program, the Court would be more comfortable if federal probation officers were monitoring his activity. Of course, the Court's concern is that Mr. Miles has repeatedly demonstrated that he not only threatens people, he carries out violent acts. Therefore, from the Court's perspective, he would represent a threat to the community, and perhaps to the people he has been convicted of threatening, if he were released. *See* 18 U.S.C. §

3553(a)(2)(C) (directing the court to consider the need "to protect the public from further crimes of the defendant").

Despite these misgivings, the Court grants the PO's request for early termination to avoid duplication of state and federal oversight. If, in fact, Mr. Miles is going to remain under the watchful eye of state officials during at least the next twenty months, it makes little sense to require the federal government to expend time and money overseeing a person being actively overseen by state authorities.

The Court GRANTS the Probation Office's Request for Early Termination (ECF No. 75).

SO ORDERED.

    /s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2014